IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORETTA WASHINGTON-MORRIS, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BUCKS COUNTY TRANSP., INC. et al., | : | No. 17-3631 |
| *Defendants*. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                           APRIL 30, 2018

These parties are immersed in a procedural quagmire. The dispute involves alleged discrimination and retaliation that took place over the course of three years. It also invokes questions of timeliness and exhaustion of administrative remedies. As an added wrinkle, the plaintiff, Loretta Washington-Morris, filed two complaints with the EEOC about the supposed discriminatory conduct but only filed suit after receiving her right-to-sue letter as to her second EEOC complaint. The defendants seek to partially dismiss the amended complaint.

For the reasons discussed in this Memorandum, the Court grants the motion in part and denies it in part. The Court concludes that Ms. Washington-Morris has alleged discrete discriminatory acts (as opposed to one continuous violation), and that she was therefore required to file timely EEOC complaints as to each discriminatory event. Thus, Ms. Washington-Morris' amended complaint only recounts two instances of discrimination that are timely. The first occurred in January 2016 when Bucks County Transport allegedly required Ms. Washington-Morris to come to work during inclement weather while similarly situated white employees were allowed to work from home. The second incident of discrimination occurred in June 2016 when Ms. Washington-Morris attempted to return to work after being on leave for carpal tunnel

surgery. The Court also concludes that Ms. Washington-Morris exhausted her administrative remedies as to her disability discrimination and retaliation claims.

## BACKGROUND

Loretta Washington-Morris is an African-American woman who started working for Bucks County Transport in 2012 as a driver. For the whole time she was employed at Bucks, Ms. Washington-Morris also had another job that Bucks accommodated in her schedule. Bucks is a private, non-profit organization that provides shared ride transportation services to people with disabilities. Ms. Washington-Morris obtained full-time status as a scheduler in January 2014.

Around that time, Ms. Washington-Morris learned that she needed to have surgery on her foot to alleviate pain from a heel spur. She requested time off for surgery and Bucks asked that she reschedule her surgery so that Bucks could train a replacement. One day after her surgery, Bucks asked Ms. Washington-Morris to complete scheduling work from home, which she did. Bucks then asked Ms. Washington-Morris to return to the office before her leave ended. She again complied . . . despite the fact that she was in a cast and on crutches. As she recounts events, Ms. Washington-Morris struggled to get to the second floor of the office building and fell several times in winter weather conditions. In contrast, white co-workers were allowed to work from home during inclement weather.

Just over a year later, in February 2015, Bucks' doctor diagnosed Ms. Washington-Morris as legally blind. Ms. Washington-Morris suffers from amblyopia, a medical condition she has had since birth that affects the vision in her left eye. As a result of the diagnosis, Bucks told her that she could no longer be a driver and stopped allowing her to use a company car to commute to and from work. Another employee whose driving privileges were revoked due to a disability was still allowed to use a company car. The day after Ms. Washington-Morris lost her

company car privileges, James Raymond, the Bucks Chief Financial Officer and one of Ms. Washington-Morris' supervisors, joked about her vision.

Ms. Washington-Morris did not experience any performance issues at work until she began working with Melissa Barnett, the Bristol Terminal Manager and another supervisor. It is not clear from the amended complaint when the two began working together. Ms. Barnett reprimanded Ms. Washington-Morris when drivers were late to pick up passengers and stopped allowing her to schedule certain drivers at particular times. Ms. Washington-Morris felt that these acts were discriminatory because she was the only African-American scheduler and the only person targeted by Ms. Barnett.

As a result of Ms. Barnett's treatment, Ms. Washington-Morris began meeting regularly with Mr. Raymond in April 2015. At one of these meetings in late May, she told Mr. Raymond that Ms. Barnett lied. Mr. Raymond became upset with her and refused to continue their regular meetings. He told Ms. Washington-Morris, for the first time, that Ms. Barnett was her supervisor. Ms. Washington-Morris was so upset from this interaction that she called her doctor to get her blood pressure checked. She was worried that the "stress from Defendant Barnett's discriminatory conduct was having an effect on her health." Compl. ¶ 51.

The next day, on May 28, Mr. Raymond and Ellen Melson, a Terminal Manager and also a supervisor, asked Ms. Washington-Morris to consider taking a position in the reservations department. The defendants told Ms. Washington-Morris that she could return to scheduling if she did not like reservations and she agreed to try the position. Ultimately, she preferred scheduling but was told that the scheduling positions were full when she asked to return.

On July 30, 2015, Ms. Washington-Morris filed a complaint with the EEOC alleging *only* race discrimination.[1]  Two and a half months later, the EEOC issued a right-to-sue letter, which gave Ms. Washington-Morris 90 days to file suit.  She never filed.

During inclement weather in January 2016, Bucks again required Ms. Washington-Morris to go into the office even though, according to Ms. Washington-Morris, other, similarly situated white employees were allowed to work from home.  Around this time, Ms. Barnett and her daughters, who were also employed at Bucks, continued to make false allegations about Ms. Washington-Morris by stating that she (Ms. Washington-Morris) refused to relay information about passengers to dispatch.

On April 20, 2016, Ms. Washington-Morris filed a second complaint with the EEOC and the PHRC alleging discrimination and retaliation based on her race *and* disabilities.

In June 2016, Ms. Washington-Morris needed carpal tunnel surgery.  After the surgery, Bucks required Ms. Washington-Morris to return to work but only offered her hours that conflicted with her other job.  She felt that Bucks' offer was an act of retaliation for filing complaints of discrimination and retaliation.

---

[1]  There is a dispute as to when Ms. Washington-Morris filed this complaint.  The date was not included in Ms. Washington-Morris' amended complaint in this action.  Bucks says that the EEOC complaint was filed in October 2015 and, at oral argument, counsel for Ms. Washington-Morris said that it was filed on July 30, 2015.  Whether the complaint was filed in July or October does not affect the outcome of any of Ms. Washington-Morris' claims for timeliness purposes.  For this motion to dismiss, the Court will assume that the complaint was filed with the EEOC on July 30, 2015.

In her amended complaint, Ms. Washington-Morris also says that the first EEOC complaint was for both race *and* disability discrimination.  However, in her briefing, Ms. Washington-Morris' counsel clarified that the first EEOC complaint was only for race discrimination.  Plff.'s Reply Br. at 15 ("Plaintiff first went to the EEOC to file a charge of discrimination alleging only race discrimination and retaliation on July 30, 2015.").

The EEOC issued a right-to-sue letter based on the second EEOC complaint on May 17, 2017. Ms. Washington-Morris filed this suit on August 11. She alleges that she has suffered psychological trauma and lost income.

## PROCEDURAL HISTORY

In her amended complaint, Ms. Washington-Morris brings claims against Bucks County Transport, Inc., Ellen Melson, Melissa Barnett, and James Raymond. She brings claims solely against Bucks for discrimination and retaliation under the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964. She brings claims against all the defendants for race discrimination under 42 U.S.C. § 1981 as well as discrimination and retaliation under the PHRA.

The defendants moved to partially dismiss the amended complaint and the Court heard oral argument. The defendants seek to dismiss all of the claims except for race discrimination under 42 U.S.C. § 1981.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Pa. Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents"). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or even discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## II. Federal Rule of Civil Procedure 12(b)(1)

A district court can grant a motion to dismiss pursuant to Rule 12(b)(1) based on the legal insufficiency of the claim. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408 (3d Cir. 1991). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack challenges the legal sufficiency of the claim but does not dispute the facts alleged in the complaint. *Id*. A factual attack allows a court to consider evidence outside the pleadings and decide whether it does, in fact, have jurisdiction to hear the case. *Id.*

Dismissal under a facial challenge is proper "only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc.,* 926 F.2d at 1408–09 (quoting *Bell v. Hood,* 327 U.S. 678, 682 (1946)). In this circumstance, the court must accept all well-pleaded allegations in the plaintiff's complaint as true, and must view them in the light most favorable to the non-movant. *In re Kaiser Group Int'l Inc.,* 399 F.3d 558, 561 (3d Cir. 2005). However, a party asserting that the court has jurisdiction *always* bears the burden of showing that the case is properly before the court. *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 (3d Cir. 1993) (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)).

Under a factual challenge, the trial court's very power to hear the case is at issue, and the court is therefore "free to weigh the evidence and satisfy itself as to the power to hear the case." *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 864, 891 (3d Cir. 1977). In such an attack pursuant to Rule 12(b)(1), "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.,* 227 F.3d 62, 69 (3d Cir. 2000) (internal quotations omitted). Where a defendant attacks a court's factual basis for exercising subject matter jurisdiction, the plaintiff must meet the burden of proving that jurisdiction is appropriate. *Id.*

## DISCUSSION

First, under Rule 12(b)(6), the Court will address the timeliness of Ms. Washington-Morris' claims for race and disability discrimination and retaliation, and her associated claims under the PHRA. *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997) ("Timeliness of exhaustion requirements are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim."). Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts, such as Title VII and the ADA. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). The parties have not argued that the PHRA claims should be analyzed differently in this case. Ms. Washington-Morris' PHRA claims will be subject to the same fate as her Title VII and ADA claims.

In analyzing the discrimination and retaliation claims, the Court considers whether Ms. Washington-Morris complains of a series of discrete discriminatory acts or whether the defendants' conduct is better categorized as a pattern or practice of discriminatory behavior, in which case the continuing violation doctrine should apply. Because a fair reading of the alleged events are a series of discrete discriminatory acts, Ms. Washington-Morris needed to file timely

8

EEOC complaints as to each of the discriminatory acts she alleges. The amended complaint includes only one timely act as to her race-related claims and only one timely act as to her disability-related claims.

The Court will then consider whether Ms. Washington-Morris exhausted her administrative remedies as to her disability-related claims under Rule 12(b)(1). Ms. Washington-Morris vaguely indicated that she believed she was being discriminated against because of her disability in her second EEOC complaint. The one timely discriminatory act related to her disability would have fallen squarely within the investigation arising out of that complaint. She has exhausted administrative remedies.

In the partial motion to dismiss, Bucks also argued that Ms. Washington-Morris' disability discrimination claims must be dismissed under Rule 12(b)(6) because she requested accommodations for her other job, not for her disability. At oral argument, the Court ruled that it would not consider this argument as part of the motion to dismiss because it is better suited for consideration during the summary judgment stage of the proceedings.

I.  The Timeliness of Ms. Washington-Morris' Claims

Ms. Washington-Morris alleges that Bucks discriminated against her because of her race and disability numerous times over the course of three years. Generally, a plaintiff must file a complaint with the EEOC within 300 days of an unlawful employment practice. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). In order to discern whether Ms. Washington-Morris filed a timely EEOC complaint as to the discriminatory events in her case, the Court first must decide whether they are a number of discrete discriminatory acts or whether the "continuing violation" doctrine applies. Then, because (as discussed below) Bucks' conduct was a series of discrete discriminatory acts, the Court will examine Ms. Washington-Morris' two

EEOC complaints and determine which discriminatory acts are time-barred and which acts give rise to still viable claims.

### A. *Discrete Discriminatory Acts and the Continuing Violation Doctrine*

Ms. Washington-Morris alleges that Bucks had a pattern or practice of discriminating against her because of her race and disabilities and argues that the continuing violation doctrine should apply to her claims. Under that doctrine, only one of the discriminatory acts needs to be timely for her to bring suit on all of the discriminatory conduct. Bucks argues that the conduct is more appropriately categorized as a number of discrete discriminatory events and Ms. Washington-Morris' EEOC complaints therefore must be timely as to each individual event.

The Court concludes that the continuing violation doctrine does not apply to this case.

"To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." *Mandel*, 706 F.3d at 165 (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Churchill v. Star Enterprises*, 183 F. 3d 184, 190 (3d Cir. 1999) (applying the administrative procedures of Title VII of the Civil Rights Act of 1964 to the ADA). The Supreme Court clarified that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* A plaintiff can, however, use acts that are otherwise time-barred "as background evidence in support of a timely claim." *Id.*

Discrete discriminatory acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Id*. at 114. The Third Circuit Court of Appeals has also found that a "reasonable accommodation request is a one-time occurrence rather than a continuing practice, and therefore, does not fit under the continuing violations theory." *Mercer v. SEPTA*, 608 F.

App'x 60, 63 (3d Cir. 2015) (Rendell, J.). This is true even when the plaintiff made multiple requests for the same reasonable accommodation and that request was repeatedly denied. *Id.*

In contrast, "[u]nder the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" *Mandel*, 706 F.3d at 165 (quoting *O'Connor v. City of Newark,* 440 F.3d 125, 127 (3d Cir. 2006)). "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Id.* at 165–66.

"The continuing violations doctrine is most often applied to hostile work environment claims, where not every act or remark itself is actionable but the series of actions gives rise to a claim based on the aggregate wrongs." *Patterson v. Strippoli*, 639 F. App'x 137, 141 (3d Cir. 2016); *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."). Ms. Washington-Morris did not make a hostile work environment claim in her EEOC complaint or before the Court. While there does not appear to be an absolute bar to using the continuing violation doctrine in discrimination cases, to do so, a plaintiff needs to demonstrate that the acts are part of the same unlawful employment practice rather than a series of separate, discriminatory events.

Ms. Washington-Morris highlights a number of examples of discriminatory conduct. For her race-related claims, she cites (1) a reduction in the number of hours she worked, (2) being required to go to work during bad weather when white co-workers were allowed to work from home, and (3) harassment from white co-workers. For her disability-related claims, she cites (1)

being required to reschedule her foot surgery and return to work before her leave ended, (2) no longer being allowed to use the company car or work as a driver after a company doctor diagnosed her as blind, and (3) Bucks only offering her shifts during the times she owed to her other job when she wanted to return from leave after her carpal tunnel surgery.

Ms. Washington-Morris argues that that these acts amount to a "pattern or practice" of Bucks discriminating against her. However, the Court concludes that this conduct is better categorized as a series of related, discriminatory events that took place over the course of several years. The Supreme Court has said that "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing" and Ms. Washington-Morris' use of the term "pattern or practice" does not do so in this case. *Morgan*, 536 U.S. at 111.

In *Morgan*, the plaintiff "alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through . . . the date that he was fired." *Morgan*, 536 U.S. at 114. In that case, the Court determined that the continuing violation doctrine did not apply to his discrimination claim and instead found that "only incidents that took place within the timely filing period [were] actionable." *Id.*; *see also Clark v. Philadelphia Hous. Auth.*, 2015 WL 1822528, at *2 (E.D. Pa. Apr. 21, 2015), *aff'd*, 701 F. App'x 113 (3d Cir. 2017) ("Plaintiff cannot save untimely claims by attempting to recast them as a continuing failure by [the defendant] to right the wrongs done her in years past.").

Here, too, Ms. Washington-Morris attempts to recast untimely claims going back three years as a pattern or practice of Bucks discriminating against her. For her race claims, she says that a number of discriminatory acts occurred that she believes were a result of her race because she was the only employee subject to discrimination and was also the only African-American

scheduler. For her disability claims, she complains about conduct related to three different disabilities over the course of several years. Ms. Washington-Morris' complaint does not allege any link between these various events to make them a pattern or practice of behavior that can be aggregated together as an unlawful employment practice. During oral argument on the pending motion, the most Ms. Washington-Morris' counsel could muster was to assert that some of the same bad actors were involved in a few of the discriminatory events. More is required to demonstrate a pattern or practice of discriminatory behavior by a defendant.

Because the continuing violation doctrine does not apply, Ms. Washington-Morris was obliged to file a complaint with the EEOC within 300 days of the discriminatory conduct in order for her allegations to be timely. The next two sections of this Memorandum consider which of Ms. Washington-Morris' claims are time-barred by her two EEOC complaints.

### B. The Two EEOC Complaints

Ms. Washington-Morris filed her EEOC complaints well after most of the discriminatory acts occurred. She also filed two separate complaints with the EEOC and received two right-to-sue letters. These circumstances further affect which claims are timely.

#### 1. First EEOC Complaint (July 30, 2015)

Ms. Washington-Morris filed her first complaint with the EEOC on July 30, 2015. Although the amended complaint says that Ms. Washington-Morris included both race and disability discrimination in her first EEOC complaint, she admits in her briefing that she only alleged race discrimination. Plff.'s Reply Br. at 15 ("Plaintiff first went to the EEOC to file a charge of discrimination alleging only race discrimination and retaliation on July 30, 2015."). She also admits that she failed to file a suit within 90 days of receiving her right-to-sue letter from the EEOC.

Under 42 U.S.C. § 2000e–5(f)(1), if the EEOC chooses not to pursue a plaintiff's cause of action based on his or her complaint, the EEOC is to "notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." The Third Circuit Court of Appeals has said that "it is settled that the ninety-day time limit in which a plaintiff must file a Title VII action is akin to a statute of limitations rather than a jurisdictional bar." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239-40 (3d Cir. 1999); *see also Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986) (noting the rigidity of the 90 day period in which a plaintiff must file suit after receiving a right-to-sue letter from the EEOC).

Ms. Washington-Morris is barred from filing suit about the discriminatory acts related to the first EEOC complaint because she did not file suit within 90 days of receiving her right-to-sue letter. This bars her from bringing suit on any race-related claims prior to when she filed that EEOC complaint on July 30, 2015. However, she has not yet waived any race-related claims from after July 30. She also has not waived any disability-related claims because she did not allege those in her first EEOC complaint.

2. *Second EEOC Complaint (April 20, 2016)*

Ms. Washington-Morris asserted both race and disability discrimination claims in her second EEOC complaint on April 20, 2016. The EEOC issued a right-to-sue letter for the second complaint on May 17, 2017. Ms. Washington-Morris filed the instant action 86 days later, on August 11.

Procedurally, Ms. Washington-Morris needed to file a complaint with the EEOC within 300 days of when the discrete discriminatory acts occurred. Three hundred days prior to the filing of her second EEOC complaint was June 25, 2015. However, Ms. Washington-Morris can only complain about racially discriminatory acts from after July 30, 2015 because, as noted

14

above, she waived those claims. Thus, the remaining question is whether there are any discrete discriminatory acts related to Ms. Washington-Morris' race claims from after July 30, 2015 and her disability claims from after June 25, 2015.

   a. Race-Related Claims from after July 30, 2015

The only racially discriminatory act that took place after July 30, 2015 occurred in January 2016 when Bucks required Ms. Washington-Morris to come into work during inclement weather while similarly-situated white colleagues were allowed to work from home. Ms. Washington-Morris alleges that Ms. Barnett and her daughters, who are also employed at Bucks, lied about her performance at work. She believed that the work location demand and the falsehoods were racially motivated because she was the only African-American scheduler. At oral argument, counsel for Ms. Washington-Morris asserted that she was also effectively terminated in fall 2016 when Bucks only offered her shifts that conflicted with her other job.

"[A]t least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016). "Instead of requiring a *prima facie* case, the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." *Id.* (quoting *Phillips*, 515 F.3d at 234). Ms. Washington-Morris has not made out the *prima facie* case for race discrimination or retaliation at this stage, nor is she required to do so yet. Ms. Washington-Morris may proceed with her race discrimination and retaliation claims as to the events that occurred in January 2016.

   b. Disability-Related Claims from after June 25, 2015

The only discriminatory act related to Ms. Washington-Morris' disability that took place after June 25, 2015 occurred *after* she filed her second EEOC complaint. Ms. Washington-Morris filed her second EEOC complaint on April 20, 2016 and claims that Bucks discriminated

against her on June 22 of that year after her carpal tunnel surgery. At that time, Ms. Washington-Morris was negotiating her return from leave associated with her surgery and she avers that Bucks would only offer her shifts that conflicted with her other job. Bucks had always accommodated her service to her other job in the past, and she felt that they were refusing to accommodate her because of her disability and complaints of discrimination.

The fact that this act took place after Ms. Washington-Morris filed her second EEOC complaint raises the question of whether Ms. Washington-Morris exhausted administrative remedies as to this act. As discussed in detail in the next section of this Memorandum, the Court concludes that she has.

**II.   Exhaustion of Administrative Remedies on the Disability Discrimination Claims**

Alternatively, Bucks seeks to have the disability discrimination and retaliation claims dismissed under Rule 12(b)(1) for failure to exhaust administrative remedies. Bucks argues that Ms. Washington-Morris made vague statements in her second EEOC complaint about disability discrimination and contends that the discriminatory acts she complains about are not clearly an outgrowth of the EEOC complaint. Defs.' Mot. to Dismiss at 13–14 ("Plaintiff's Current Charge is devoid of any factual support that would put the EEOC on notice of a claim of disability discrimination or retaliation."). This appears to be a facial challenge, which contests the sufficiency of the pleadings. Bucks does not dispute any of the facts Ms. Washington-Morris alleges and only challenges whether, based on those facts, she exhausted her administrative remedies. Accordingly, the Court must accept the allegations of the amended complaint as true, and consider whether Ms. Washington-Morris' claims "clearly appear[ ] to be immaterial and made solely for the purpose of obtaining jurisdiction or where [the claim] is wholly insubstantial and frivolous." *Bell,* 327 U.S. at 682–83.

"A plaintiff 'must exhaust all required administrative remedies before bringing a claim for judicial relief.'" *Mandel*, 706 F.3d at 163 (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)). This requires a plaintiff to file a charge of discrimination with the EEOC and receive a notice of his or her right to sue from that agency. *Id.*

"The relevant test in determining whether appellant was required to exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *see also Antol v. Perry*, 82 F.2d 1291, 1295-96 (3d Cir. 1996). This also includes when discriminatory acts occur after the plaintiff filed the EEOC complaint, such as in this case. *See Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398–99 (3d Cir. 1976) ("[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, *including new acts which occurred during the pendency of proceedings* before the [EEOC]." (emphasis added)); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) ("[A] district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims."). Indeed, "[r]equiring a new EEOC filing for each and every discriminatory act would not serve the purposes of the statutory scheme where the later discriminatory acts fell squarely within the scope of the earlier EEOC complaint or investigation." *Antol*, 82 F.2d at 195.

In her second EEOC complaint, Ms. Washington-Morris stated, "I also believe Respondent discriminated against me because of my disability in violation of the Americans with Disabilities Act of 1990, as amended, for subjecting me to different terms and conditions of

employment." Defs.' Mot. to Dismiss at Ex. B.  Ms. Washington-Morris filed the second EEOC complaint on April 20, 2016, and the EEOC concluded its investigation and issued a right-to-sue letter on May 17, 2017.  Unlike *Antol*, in which the plaintiff was trying to assert claims for gender discrimination when he only asserted disability discrimination in his EEOC complaint, Ms. Washington-Morris stated in her second EEOC complaint that she also believed Bucks was discriminating against her because of her disabilities.

While Ms. Washington-Morris' second EEOC complaint lacks specificity, it put Bucks on notice that she was making claims for disability discrimination and retaliation in addition to her race-related claims.  Furthermore, it put the EEOC on notice that the agency should investigate claims of disability discrimination and retaliation.  Given that the EEOC's investigation was ongoing at the time when Bucks allegedly discriminated against Ms. Washington-Morris by only offering her shifts that conflicted with her other job, the conduct also falls squarely within the scope of the EEOC's investigation.

Ms. Washington-Morris exhausted her administrative remedies on her timely disability-related claims and she may proceed as to those claims.

## CONCLUSION

The Court grants the motion to dismiss in part and denies it in part.  Ms. Washington-Morris may proceed with her race discrimination and retaliation claims that stem from the January 2016 discriminatory conduct and related events.  She may also proceed with her disability discrimination and retaliation claims as to the June 2016 discriminatory conduct and related events.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE